**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark S. Sokolsky, | No. 1:07 CV-00594 SMM |
| Plaintiff, | **ORDER** |
| vs. | |
| W.T. Voss, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Mae O'Brien, Linda Clark, Cindy Maynard, and Barbara Rodriguez (collectively, "Defendants") Motion to Dismiss[1] (Dkt. 14), Plaintiff Mark S. Sokolsky's (hereafter, "Plaintiff") Response (Dkt. 17), Defendants' Reply (Dkt. 18), and Plaintiff's sur-reply (Dkt. 22)[2]. Defendants allege that Plaintiff failed to state a claim

---

[1] On June 30, 2009, the Clerk of Court entered default against Defendant Patrick Daley. (Dkt. 26.) After being served with process, Daley failed to appear, plead, or answer. (Id.) Thus, Daley has not joined this motion to dismiss. Daley recently moved on July 21, 2009 to set aside the entry of default against him (Dkt. 28). However, Plaintiff's time to respond to the set aside motion has not yet run.

[2] Plaintiff would typically be barred from filing a sur-reply without first receiving leave of the court to do so. L.R. 78-230 (allowing only a motion, a memorandum in support of the motion, a response, and a reply). However, Defendants did not file a motion to strike so the Court will consider the sur-reply. Moreover, Plaintiff's sur-reply became necessary after Defendants spent the vast majority of the Memorandum in Support of their Motion to Dismiss discussing the merits of a § 1983 claim, despite the fact that Plaintiff only brought a claim under the Religious Land Use and Institutionalized Persons Act of 2000

upon which relief can be granted in his Complaint (Dkt. 1) and seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff is currently housed at Coalinga State Hospital. (Dkt. 1, Pl.'s Compl., ¶ 2.) Plaintiff alleges that on or about December 18, 2006, Defendants (excluding Defendant Barbara Rodriguez) agreed to provide Plaintiff with Kosher meals, free of charge. (Id. at ¶ 13.) Plaintiff contends that the State of California agreed to provide free Kosher meals to detained observant Jewish men and women, pursuant to a previous settlement agreement. (Id. at ¶¶ 12-13.) Defendants agree that they established a "regulatory mechanism" to provide Plaintiff with Kosher meals while he is detained at Coalinga State Hospital. (Dkt. 18, Defs.' Reply, 2:15-16.)

Plaintiff further alleges that on or about January 3, 2007, Defendants agreed to provide Plaintiff with "Kosher-for-Passover" meals for the Passover observance that year, which ran from April 2, 2007 through April 10, 2007. (Dkt. 1, Pl.'s Compl., ¶ 14.) Kosher-for-Passover meals have stricter dietary requirements than both non-Kosher and regular Kosher meals. (Id. at 2 n. 2.) Plaintiff alleges that this agreement regarding Kosher-for-Passover meals affected twenty-five total meals during that time, and that Defendants also agreed to provide these meals free of charge. (Id.) However, Plaintiff alleges that, instead of Kosher-for-Passover meals, Defendants provided Plaintiff with the standard Kosher meals he was provided throughout the year. (Id. at ¶¶ 15-16.)

Upon realizing that Defendants provided standard Kosher meals and not the Kosher-for-Passover meals he believed he would be receiving, Plaintiff alleges that he contacted the various Defendants in order to get them to comply with Jewish dietary law. (Id. at ¶¶ 17-21.) Plaintiff further alleges that, in addition to not receiving the Kosher-for-Passover meals he

---

("RLUIPA"), 42 U.S.C. § 2000cc-1. (Dkts. 15, 1.) The Court appreciates Defendants' admission of their mistake (Dkt. 18, Defs.' Reply, 2:1-3), but Defendants then spent a portion of their Reply citing the wrong section of RLUIPA. (Id. at 2:4-27.) The Court emphasizes the importance of thoroughly reading all documents filed by Plaintiff or this Court.

- 2 -

requested, he was subjected to discipline due to his complaints. (Id. at ¶¶ 20.) On April 18, 2007, Plaintiff filed his Complaint with United States District Court in the Eastern District of California. (Dkt. 1, Pl.'s Compl.) Plaintiff seeks damages under RLUIPA. On November 24, 2008, the case was reassigned to the undersigned judge in the District of Arizona. (Dkt. 16.)

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-556 (2007) (internal citations omitted). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996) (quoting Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991). When exercising its discretion to deny leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

**DISCUSSION**

**I.   Plaintiff's prima facie case under RLUIPA**

Prisoners retain their First Amendment right that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir. 2004). Under RLUIPA, a government may not impose a "substantial burden" on the religious exercise of a confined person unless the government

establishes that the burden furthers a "compelling governmental interest" and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). The "compelling government interest" and "least restrictive means" tests replaced the "legitimate penological interest" test set forth in Turner v. Safley, 482 U.S. 78 (1987). Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)). By its own terms, RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id. at 995 (citing 42 U.S.C. § 2000cc-3(g)). In Cutter v. Wilkinson, 544 U.S. 709 (2005), the Supreme Court upheld the constitutionality of RLUIPA against an Establishment Clause challenge.

### A. Religious exercise

RLUIPA "accord[s] religious exercise heightened protection from government-imposed burdens." Id. at 714. RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Greene v. Solano County Jail, 513 F.3d 982, 986 (9th Cir. 2008) (quoting 42 U.S.C. § 2000cc-5(7)(A); Warsoldier, 418 F.3d at 994 (9th Cir. 2005)). While there has been limited opportunity to consider the issue under RLUIPA, the Ninth Circuit has acknowledged the Fifth Circuit's recognition that keeping Kosher and observing the Jewish Sabbath constitutes sufficient religious exercise for RLUIPA analysis. See Greene, 513 F.3d at 988 (citing Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007)). Furthermore, the Ninth Circuit has established the principle that institutionalized individuals have a constitutional right to food that is not only adequate for nutritional purposes, but also adheres to the individual's religious mandates. Ashelman v. Wawrzaszek, 111 F.3d 674, 677 (9th Cir. 1997) (citing Ward v. Walsh, 1 F.3d 873, 876 (9th Cir. 1993) and quoting McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987)).

Plaintiff claims that he holds a deep and sincere faith in Judaism. (Dkt. 1, Pl.'s Compl., 2 ¶ 3.) Plaintiff also states that "keeping kosher" is a central tenet of Judaism. (Id.) Defendants do not dispute these claims. Plaintiff further alleges that, during Passover, the meaning of "Kosher" changes in that the kinds of foods Kosher-observant Jews can consume

are more restricted, as are the ways in which food can be prepared and contained. (Id. at 2 n. 2.) Defendants do not address the distinction between Kosher-for-Passover meals and the standard Kosher fare in any fashion, and thus ignore Plaintiff's sincerely-held beliefs regarding his dietary restrictions. Regardless, the Court finds that Plaintiff's beliefs regarding keeping Kosher, both during the Passover season and throughout the year, constitute a religious exercise.

### B.     Substantial burden

A plaintiff bears both the burden of establishing a prima facie case and the burden of persuasion on whether there is a "substantial burden" on the plaintiff's exercise of religious beliefs. Warsoldier, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)). A burden is substantial when it imposes a significantly great restriction or onus upon religious exercise. Id. at 995 (quotations omitted). A restriction on religious exercise that is so significant as to effectuate an outright ban on the exercise is likely the most substantial burden a government can establish. Greene, 513 F.3d at 988 (9th Cir. 2008) (citing Murphy v. Mo. Dep't of Corrs., 372 F.3d 979, 988 (8th Cir. 2004); Meyer v. Teslik, 411 F. Supp. 2d 983, 989 (W.D.Wis. 2006)).

Plaintiff alleges that Defendants agreed to provide him with Kosher meals, free of charge, during Plaintiff's stay at Coalinga State Hospital. (Id. at 4 ¶ 13.) Plaintiff also contends that, over the three month period preceding the 2007 Passover season, Defendant Maynard assured Plaintiff that arrangements had been made so that Kosher-observant Jews would receive Kosher-for-Passover meals during Passover. (Id. at 5 ¶ 19.) However, these meals were never provided to Plaintiff. (Id. at 4 ¶¶ 15-16.) Plaintiff's Complaint illustrates the steps Plaintiff took in order to receive the Kosher-for-Passover meals he required in order to eat while adhering to his religious beliefs. (Id. at ¶¶ 17-21.) According to Plaintiff, all these measures were fruitless; as a result, Plaintiff alleges that he was unfed for eight days. (Dkt. 17, Pl.'s Opp'n, 3:11-12.)

Plaintiff alleges that Defendants' restriction on his ability to keep Kosher-for-Passover was absolute, and that this restriction put Plaintiff to a Hobson's choice in which he was forced to either violate his sincerely-held religious beliefs or starve. (Dkt.17, Pl.'s Opp'n,

1   4:26-5:3.) Defendants do not dispute this point. Instead, Defendants only assert that a
2   "regulatory mechanism" was established to provide Plaintiff with Kosher meals while at
3   Coalinga State Hospital. (Dkt. 18, Defs.' Reply, 2:15-16.) As discussed above, Defendants'
4   argument ignores the distinction between "Kosher" and "Kosher-for-Passover." When, as
5   here, an adherent is forced to choose between compliance with his sincerely-held religious
6   beliefs and starvation, the Court can hardly imagine a burden on religious exercise that is
7   more substantial. Viewing the facts in a light most favorable to Plaintiff, the Court finds that
8   Plaintiff has alleged facts sufficient to support a cognizable legal claim. See SmileCare
9   Dental Group, 88 F.3d at 783.

10  **II.    Defendants' affirmative defense**

11  If the plaintiff meets his burden of proof with regards to a substantial burden on his
12  religious exercise, the government bears the burden of persuasion to prove that the restriction
13  is both in furtherance of a compelling governmental interest and the least restrictive means
14  of furthering that interest. Warsoldier, 418 F.3d at 995 (citing 42 U.S.C. § 2000cc-1(a);
15  § 2000cc-2(b)).

16  The Ninth Circuit has acknowledged that "maintain[ing] good order, security and
17  discipline, consistent with consideration of costs and limited resources," is a compelling
18  government interest that the state can cite in the context of RLUIPA claims. Shakur v.
19  Schriro, 514 F.3d 878, 889 (9th Cir. 2008) (citing Cutter, 544 U.S. at 722). Assuming
20  Defendants' burdensome actions were in furtherance of a compelling governmental interest,
21  the actions still must meet the "least restrictive means" test set forth in RLUIPA. 42 U.S.C.
22  § 2000cc-1(a)(2). Defendants cannot meet their burden proof with regards to least restrictive
23  means unless they can demonstrate that they have "actually considered and rejected the
24  efficacy of less restrictive measures before adopting the challenged practice." Warsoldier,
25  418 F.3d at 999 (citing United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 824
26  (2000)).

27  Plaintiff contends that Defendant O'Brien cited cost as the reason for not providing
28  Plaintiff with Kosher-for-Passover meals. (Dkt. 1, Pl.'s Compl., 4 ¶ 18.) However, there is

1  no indication by either Plaintiff or Defendants that order, security, or discipline were also
2  factored into the decision to deny Plaintiff his requested Kosher-for-Passover meals.
3  Additionally, Defendants do not demonstrate that the additional cost of providing these
4  twenty-five Kosher-for-Passover meals would be prohibitive. Furthermore, Defendants do
5  not allege that they considered other less restrictive measures before denying Plaintiff his
6  requested Kosher-for-Passover meals. As such, the Court cannot find that Defendants have
7  met their burden with regards to either the compelling governmental interest or least
8  restrictive means tests. Viewing the facts in a light most favorable to Plaintiff, the Court finds
9  that Plaintiff has presented factual allegations that raise his right to relief above the
10 speculative level. See Bell Atlantic, 550 U.S. at 555-556.

11 **III.    Plaintiff's requested remedies**

12     Plaintiff requests compensatory damages in the amount of $1,000,000.00 for violating
13 RLUIPA. (Id. at 6 ¶ 26, 7:3-4.) Plaintiff also requests punitive damages in the amount of
14 $4,000,000.00 for massive intentional disrespect for Judaism and unjustifiable and intentional
15 anti-Semitism. (Id. at 6 ¶ 28, 7:5-6.)

16     RLUIPA provides that an individual who has been subjected to substantial burden of
17 his religious exercise can bring a cause of action for "appropriate relief." 42 U.S.C. §
18 2000cc-2(a). Plaintiff contends that the only appropriate relief is monetary damages. (Dkt.
19 17, Pl.'s Opp'n, 6:4.) Defendants counter that the Eleventh Amendment immunizes the state
20 from suit for damages, thus monetary relief cannot be obtained from Defendants in their
21 official capacities. (Dkt. 15, Defs.' Mem. in Supp. of Mot., 6:20.) Defendants further argue
22 that RLUIPA provides no claim to monetary damages against Defendants in their individual
23 capacities. (Dkt. 22, Defs.' Reply, 3:2-3.) Despite the fact that Plaintiff does not name any
24 of the Defendants in their individual capacities, the Court holds a pro se litigant's pleadings
25 to a less stringent standard than formal pleadings drafted by lawyers, and thus will consider

the issue[3]. Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam)).

### A.    Defendants' official capacities

In general, states are protected from suit in federal court by the sovereign immunity principle incorporated in the Eleventh Amendment. Lovell v. Chandler, 303 F.3d 1039, 1050 (9th Cir. 2002) (citing Alden v. Maine, 527 U.S. 706, 713 (1999); Hans v. Louisiana, 134 U.S. 1, 15 (1890)). "In considering whether the Eleventh Amendment applies . . . cases involving the sovereign immunity of the Federal Government . . . provide guidance." California v. Deep Sea Research, Inc., 523 U.S. 491, 506 (1998) (citing Tindal v. Wesley, 167 U.S. 204, 213 (1897); Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 710 (1982)). For purposes of sovereign immunity, "a suit against a state official in his or her official capacity is . . . no different than a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

However, states can waive their sovereign immunity in particular situations. For example, a state can waive its immunity by accepting federal funds that are expressly conditioned on a waiver of that immunity. Clark v. State of Cal., 123 F.3d 1267, 1271 (9th Cir. 1997) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 247 (1985)). RLUIPA is a federal statute enacted under Congress' Spending Clause. Mayweathers v. Newland, 314 F.3d 1062, 1066 (9th Cir. 2002). Plaintiff contends that the reference to "appropriate relief" in section 3 of RLUPIA constitutes a clear waiver of the state's sovereign immunity. (Dkt. 17, Pl.'s Opp'n, 6:1-2.) However, despite Plaintiff's contention, nowhere in its text does the statute clearly condition receipt of federal funds on a waiver of a state's sovereign immunity. See 42 U.S.C. § 2000.

---

[3]The Ninth Circuit has held that where the pro se plaintiff seeks damages against a state official, a strong presumption is created in favor of an individual-capacity suit because an official-capacity suit for damages would be barred. See Hydrick v. Hunter, 500 F.3d 978, 987 (9th Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3410 (U.S. Jan. 17, 2008) (No. 07-958) (citing Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999)).

The Ninth Circuit has yet to consider this issue, so a review of other circuits' jurisprudence is relevant. The Third, Fourth, Fifth, Sixth, and Seventh Circuits have concluded that states are immune from claims for monetary damages under RLUIPA. Cardinal v. Metrish, 564 F.3d 794, 799 (6th Cir. 2009) (internal citations omitted); Nelson v. Miller, ___ F.3d ____, 2009 WL 1873500, at *14 (7th Cir. 2009). The Eleventh Circuit takes the opposite view, ruling that a state's receipt of federal funds under RLUIPA is sufficient to constitute a waiver of its sovereign immunity. Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007).

The Court also looks to the Ninth Circuit's decisions regarding § 1983 claims against defendants in their official capacities for guidance. The State of California has not waived its sovereign immunity from federal § 1983 claims brought by prisoners. Brown v. Cal. Dep't of Corrs., 554 F.3d 747, 752 (9th Cir. 2009) (citing Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999)). The Court appreciates Plaintiff's contention that he is being involuntarily detained at Coalinga State Hospital and is not a prisoner as our standard nomenclature describes it. (Dkt. 1, Pl.'s Compl., ¶ 25.) However, RLUIPA, through 42 U.S.C.A. § 1997, defines an "institution" as both a hospital and a prison. 42 U.S.C.A. § 1997(1)(B). As such, RLUIPA applies equally to prisoners and other institutionalized persons, hence the Court's reliance on Brown. See 42 U.S.C. § 2000cc-1(a).

Due to the weight of authority, the Court finds that RLUIPA's provision for "appropriate relief" is insufficient to effectuate a clear waiver of the state's sovereign immunity. As such, Defendants are immune from suit in their official capacities.

### B. Defendants' individual capacities

Although RLUIPA does not explicitly provide plaintiffs with a right to claim monetary damages against defendants in their individual capacities, it likewise does not bar such relief. See 42 U.S.C. § 2000cc-2. The Ninth Circuit has yet to consider this issue as well, so a review of other Circuits' jurisprudence is likewise relevant. The Fourth, Fifth, Seventh, and Eleventh Circuits have all recently held that RLUIPA does not provide for damages actions against government officials in their individual capacities. See Nelson, ___

1 F.3d ____, 2009 WL 1873500; Rendelman v. Rouse, ___ F.3d ____, 2009 WL 1801530 (4th Cir. 2009); Sossamon v. Lone Star State of Tex., 560 F.3d 316 (5th Cir. 2009); Smith v. Allen, 502 F.3d 1255 (11th Cir. 2009). No other circuits have considered the question.

As before, the Court also looks to the Ninth Circuit's decisions involving § 1983 claims for direction regarding defendants in their individual capacities. A state official who violates federal law "is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct." Ngiraingas v. Sanchez, 858 F.2d 1368, 1373 (9th Cir. 1988) (quoting Scheuer v. Rhodes, 416 U.S. 232, 237 (1974) (italics in original)). Moreover, state officials who serve in supervisory capacities are subject to liability in their individual capacities. Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) (quoting Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) ("Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.")).

Defendants argue that the doctrine of qualified immunity bars Plaintiff's claims against Defendants in their individual capacities. (Dkt. 15, Defs.' Mem. in Supp. of Mot., 5 n. 1.) Qualified immunity protects government officials performing discretionary functions from civil suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Inouye v. Kemna 504 F.3d 705, 712 (9th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable for the irresponsible exercise of power and the need to shield officials from liability when they perform their duties reasonably. Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 815 (2009).

Qualified immunity involves a two-step analysis: first, the Court will view the facts in a light most favorable to the plaintiff in order to determine whether the defendants'

1  conduct violated a constitutional right. <u>Inouye</u>, 504 F.3d at 712 (quoting <u>Saucier v. Katz</u>, 533
2  U.S. 194, 201 (2001)). If a constitutional violation has been found, the Court will then
3  determine "whether the right was clearly established," applying an objective, fact-specific
4  inquiry. <u>Id.</u> If an official reasonably believed that his conduct was lawful, qualified immunity
5  applies. <u>Levine v. City of Alameda</u>, 525 F.3d 903, 906 (9th Cir. 2008) (citing <u>Jeffers v.
6  Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001)). In order to reject a defense of qualified
7  immunity, the Court must find that "the contours of the right [are] sufficiently clear that a
8  reasonable official would understand that what he is doing violates the right." <u>Inouye</u>, 504
9  F.3d at 712 (quoting <u>Saucier</u>, 533 U.S. at 202; <u>Anderson v. Creighton</u>, 483 U.S. 635, 640
10 (1987)).

11 Plaintiff alleges that Defendants violated his rights under RLUIPA. (Dkt. 1, Pl.'s
12 Compl., 1:24-2:2.) The Court has already addressed that issue, so the inquiry turns to the
13 question of whether the right was clearly established. The Ninth Circuit has repeatedly held
14 that an inmate has a constitutional right to "food sufficient to sustain [him] in good health
15 that satisfies the dietary laws of [his] religion." <u>Ashelman</u>, 111 F.3d at 677 (citing <u>Ward</u>, 1
16 F.3d at 876 and quoting <u>McElyea</u>, 833 F.2d at 198). As discussed above, Defendants do not
17 dispute Plaintiff's allegations that he maintains a sincere faith in Judaism and adheres to a
18 strict Kosher diet. Knowing this, the Court finds that providing Plaintiff with a diet that
19 satisfies the mandates of his religion is a clearly established right. The Court also finds that
20 a reasonable official would understand that Defendants' failure to provide Plaintiff with such
21 a diet would violate that clearly established right. Thus, Defendants' qualified immunity
22 defense does not prevent Plaintiff's entitlement to relief.

23 **C.    Declaratory and injunctive relief**

24 The Eleventh Amendment does not bar a suit against a State official when that suit
25 seeks prospective injunctive relief in order to "end a continuing violation of federal law."
26 <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 73 (1996). However, Plaintiff pled neither
27 declaratory nor injunctive relief in his Complaint. (Dkt. 1, Pl.'s Compl.) As such, the Court
28 will not consider the issue.

**IV.    Administrative Remedies**

Plaintiff alleges that he is not a prisoner as defined by 28 U.S.C.A. § 1915(h), and is consequently not subject to the provisions of the Prison Litigation Reform Act, 42 U.S.C. § 1997e. (Dkt. 1, Pl.'s Compl., ¶ 25.) As such, Plaintiff contends that he is not required to exhaust available administrative remedies before filing his Complaint in federal court. (Id.) Defendants do not dispute Plaintiff's assertion. Viewing the facts in a light most favorable to Plaintiff, the Court accepts this allegation as true.

## CONCLUSION

After construing all allegations of material fact in the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented factual allegations that raise his right to relief above the speculative level. Plaintiff has alleged facts sufficient to support a cognizable legal claim. Specifically, Plaintiff met his burden of proof with regards to Defendants' substantial burden on his religious exercise. Furthermore, Defendants were unable to meet their burden of proof with regards to the affirmative defense of compelling governmental interest and least restrictive means.

Additionally, the doctrine of sovereign immunity bars Plaintiff's request for monetary relief from Defendants in their official capacities. Also, though the Ninth Circuit has yet to discuss the issue, the weight of authority leads this Court to find that Plaintiffs can seek monetary relief from Defendants in their individual capacities. Moreover, Defendants' argument that the doctrine of qualified immunity bars such a claim for relief fails at this stage of the litigation, and this affirmative defense is more properly raised in a motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' O'Brien, Clark, Maynard, and Rodriguez Motion to Dismiss (Dkt. 14) is **DENIED**.

///

///

///

1    **IT IS FURTHER ORDERED** that Defendants' O'Brien, Clark, Maynard, and
2 Rodriguez must answer Plaintiff's Complaint by **August 28, 2009**.
3    DATED this 24th day of July, 2009.

*Stephen M. McNamee*
Stephen M. McNamee
United States District Judge